## AMERICAN TELEPHONE & TELEGRAPH CO. v. POSTAL TELEGRAPH-CABLE CO.

(Circuit Court of Appeals, Fifth Circuit. January 4, 1921.)

No. 3500.

1. Eminent domain ⟨⠿⟩198(1)—Interference with existing telephone lines not to be decided before condemnation of right on railroad right of way.

In proceedings under Laws Fla. 1903, c. 5211, authorizing condemnation for a telegraph or telephone line along a railroad right of way, provided the line shall be constructed so as not to interfere with the operation of an existing telegraph or telephone line, the question whether the proposed telegraph line will interfere with an existing line owned by intervener, is not to be decided in limine, where the pleadings and evidence indicate that it could be so constructed along the proposed line as not to interfere with the existing line.

⟨⠿⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. **Eminent domain** ⊂⊃198(1)—**Authorizing condemnation for telegraph line and requiring that it must not interfere with existing lines held not error.**

In a proceeding to condemn the right to erect and operate a telegraph line along a railroad right of way, where the owner of an existing line along such right of way intervened, claiming the erection of the proposed line and its operation with petitioners' instruments would interfere with the operation of intervener's telephone line, and praying that, if the right was granted, the judgment should require petitioner to operate its line with specified instruments, which would not interfere, it was not error to enter judgment for condemnation which required the construction of the line so as not to interfere with an existing line.

In Error to the District Court of the United States for the Southern District of Florida, Rhydon M. Call, Judge.

Condemnation proceeding by the Postal Telegraph-Cable Company against the Florida East Coast Railway Company to condemn the right to erect a telegraph line upon the railroad right of way, in which proceeding the American Telephone & Telegraph Company intervened. Judgment condemning the right of way prayed for (258 Fed. 493), and intervener brings error. Affirmed.

See, also, 255 Fed. 850, 167 C. C. A. 178.

Fred T. Myers, of Tallahassee, Fla., and Charles M. Bracelen, of New York City, for plaintiff in error.

Richard P. Marks and Sam R. Marks, both of Jacksonville, Fla., for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. On September 18, 1917, the Postal Telegraph-Cable Company, a corporation chartered under the laws of Delaware and a citizen of said state, filed a petition in the United States District Court for the Southern District of Florida against the Florida East Coast Railway Company, a corporation chartered under the laws of Florida and a citizen of said state, to condemn the right to erect its poles and lines upon the railroad right of way of said company for the purpose of establishing a telegraph and telephone line between East Palatka, Miami, and intermediate points. Said petition was filed under chapter 5211 of the Laws of Florida (1903), known as the telegraph act, entitled:

"An act to aid in the construction of telegraph or telephone lines, and prescribing the mode of procedure for the exercise of the powers of eminent domain by them against railroad companies for the right to construct, maintain and operate their lines upon their right of way."

Said act provided that any telegraph or telephone company organized under the laws of Florida or any other state should have the right to construct, maintain and operate its lines along and upon the right of way of any railroad of the state, and was granted thereby all powers for the exercise of the right of eminent domain, provided—

"the ordinary travel or use of said railroad is not interfered with by reason thereof and provided further that no pole shall be erected nearer than twenty feet from the outer edge of the track, unless by the consent of the railroad company."

If the consent of the railway company could not be acquired provision was made for condemnation by filing a petition in the office of the clerk of the circuit court of any county through which the railroad ran, unless its principal office or other place of business was in a county into which a portion of the right of way sought to be condemned extended, in which event the condemnation proceedings were to be had in said last mentioned county. The case was to be docketed on the chancery docket and to be tried by the judge, who should, however, provide a jury to whom should be submitted the assessment of the damages, which said verdict, judgment, and decree thereon should be recorded in the chancery order book of said court. Said statute further provided:

"Said judgment and decree shall provide that such telegraph or telephone line shall be constructed, as set out in the petition, and so as not to interfere with the operation of the trains of said defendant, or any telegraph or telephone line already upon such right of way, and, furthermore, that, if, at any time the railroad or railway company shall desire, for railroad purposes, the immediate use of any land occupied by said telegraph or telephone company, then the telegraph or telephone company shall, upon reasonable notice in writing by such defendant, at its own expense remove its line to some other place adjacent thereto on such right of way, so as not to interfere with the track or use of said railroad, or any telegraph or telephone line already on said right of way. * * *"  Section 3.

A portion of section 1 of the above act of 1903 provides:

"Any person or corporation other than the defendant railroad or railway company made a party defendant shall if a resident of this state, be served with process," etc.

By section 7 it is provided:

" * * * and only the interest of such parties as are brought before the court shall be condemned in any, such proceedings."

Prior to the adoption of said statute in 1903 there existed a general statute entitled:

"An act prescribing the mode of procedure for the exercise of the powers of eminent domain, by cities, towns, counties, corporations, public and private, and individuals." Laws 1901, c. 5017.

Said statute contained the following provision:

"Any person interested in or having a lien upon the property, not made a party, may become a party as of course by filing his petition of intervention setting forth under oath his interest, before the return day, or afterward by order of the judge." Section 5; Gen. St. 1906, § 2012.

On November 3, 1917, the American Telegraph & Telephone Company presented a petition praying to be allowed to intervene in, and become a party defendant to, said proceedings. It alleged that it had entered into a contract with the defendant railway company in January, 1916, whereby it had acquired the right to construct its telephone lines upon the right of way of the railroad of said railway company upon the side opposite to that occupied by the lines of the Western Union

Telegraph Company and the International Ocean Telegraph Company and that it had constructed its lines thereon. This contract was to continue in effect 25 years from February, 1916, with an option to the intervener to extend the period for a further 25 years. It set up that the operation of the proposed line of the Postal Telegraph-Cable Company would result in inductive interference with its telephone currents, which would seriously impair, if not destroy, the service to the public furnished by it over said lines—

"unless in the use of its said lines the said Postal Telegraph-Cable Company shall be strictly limited to particular kinds of apparatus designed to obviate and prevent said interference, and unless the said Postal Telegraph-Cable Company shall refrain and be prevented from using and shall not use in connection with the operation of the said line types of telegraph apparatus now in use by the said Postal Telegraph-Cable Company and other telegraph companies in connection with the transmission of messages over their lines."

It prayed for leave to intervene and answer and—

"that the said Postal Telegraph-Cable Company be prohibited from proceeding with this condemnation in such manner as to in any wise interfere with the use of the telephone line of your intervener already on said right of way, and that the rights of your intervener in its said telephone line be in all respects fully protected."

Leave to intervene was granted on November 3, 1917. Said intervener then filed an answer in said condemnation proceedings, setting up the same facts as set up in its petition to be allowed to intervene, averring that the petition for condemnation proceedings did not disclose that the right of way on the side of the railway opposite that upon which the lines of the Western Union Telegraph Company and the railway company were erected was occupied by the telephone lines of intervener, averring that the construction of the line of the character or location described in said petition—

"would physically interfere substantially and materially with defendant's said telephone line and its operation, and the operation of petitioner's proposed line and the use in connection therewith of types of telegraph apparatus now used by said petitioner and other telegraph companies in connection with the transmission of messages over their lines would result in inductive interference with the telephone current essential to the transmission of speech over the lines of this defendant which would seriously impair if not entirely destroy, the service to the public furnished by defendant over its said line"

and averring that the statute of Florida authorizing the exercise of eminent domain in behalf of telegraph companies on the right of way of the railway companies could not be invoked, where the result of the construction and operation of the proposed line would interfere with the operation of the trains of the railway company, or the operation of any telegraph or telephone lines already upon such right of way, and the intervener prayed that before proceedings to assess the damages therefor by a jury the court could determine the extent of interference with defendant's service resulting from such construction and operation and—

"whether the right to condemn should be refused or granted, and, if granted, the restrictions and conditions that shall be incorporated in said grant in

order to fully protect this defendant's line and prevent the impairment of the efficiency of defendant's service over its said line."

The railway company answered said petition, incorporating therein a demurrer attacking the constitutionality of said statute of 1903, setting up causes why the petition should not be granted—among other things that no necessity for such condemnation exists; that it had entered into a contract with the intervener by which the right to construct telephone lines over its right of way had been granted, and pursuant to its contract such line had been built; that about 13.3 per cent. of the right of way was only 50 feet wide or less; that the poles of the intervener, where the right of way is 100 feet wide, are located approximately 27 feet from the center of the track on the side opposite to that on which the Western Union Telegraph Company's and the railroad company's poles are erected; that these distances are not uniform, but vary at many points on account of the variation in width of the right of way, and on account of switches, structures upon the right of way, etc.; that at the time of filing the petition three separate and distinct lines of wires were on its right of way, strung on two lines of poles, one line on each side of its roadbed; that the erection of petitioner's line would interfere by induction with the operation of the other lines already built and in operation.

On April 21 and following days testimony was taken on the issues presented by the answers. On April 25, 1919, petitioner filed a motion that the court find in its favor and refer the case to a jury for the assessment of damages. The court, on June 13, 1919, filed its opinion, in which it sustained the right of defendant to condemn, as against the railroad company, an easement for the construction of its lines upon the railroad company's right of way.

As to the American Telephone & Telegraph Company, after reciting that considerable testimony, expert in its nature, had been introduced both for and against the contention that the operation of the petitioner's lines would interfere with the lines now operated by the intervener, the court held that this question was not at that time properly before it for consideration, and sustained the contention of the petitioner that the act of 1903 did not contemplate condemning the property right of any one except the railroad company; that it might become necessary for the court on another proceeding to decide whether the line, if constructed, interfered with the operation of an existing telegraph or telephone line; but that it could not be decided in limine in this statutory proceeding.

The case was thereupon submitted to the jury, which assessed damages in favor of the defendant railway company at $3,042, and on October 31, 1919, a judgment was entered, condemning the right of way described in said petition, excepting two certain places where the right of way was only 35 feet in width.

. "It was further ordered, adjudged, and decreed by the court that petitioner's said telegraph and telephone line shall be constructed as aforesaid, and so as not to interfere with the operation of the trains of said defendant railway company or with any telegraph or telephone lines already erected upon said right of way."

Said railway company having declined to join in an appeal, a judgment of severance of said defendant was on December 11, 1919, ordered, and a writ of error sued out by the intervener on said day to the United States Circuit Court of Appeals for the Fifth Circuit. No supersedeas of said judgment was applied for, presumably because section 4 of said act of 1903 provides that such an appeal in no case operates as a supersedeas, where the petitioner has paid the amount of the verdict of the jury into court as aforesaid, so as to prevent, hinder, or delay petitioner in the construction of its lines.

The sole question thus presented is whether the action of the court below in declining, in this proceeding under the Florida statute of 1903, to determine whether the intervener could defeat the condemnation of an easement on the railway company's right of way is reversible error, the judgment being conditioned on the petitioner constructing the line for which the right of way is condemned, so as not to interfere with the operation of the intervener's telephone line.

[1] The intervener does not own any interest which is sought to be condemned, and does not intervene in order to ask for compensation for any property or right which it says will be taken. It is to be noted that the statute does not confer any right to condemn any part of the already occupied easement of the intervener. By its title the statute is confined solely, in its provision for procedure, to—

"prescribing the mode of procedure for the exercise of the powers of eminent domain, by them [telegraph and telephone companies] against railroad companies, for the right to construct, maintain, and operate their lines upon their right of way."

The statute would seem to contemplate the filing of proceedings against the railroad company, or other owner of an interest in the right of way, which interest is sought to be condemned. It does not allow the condemnation of, or a payment for, a right to interfere with an existing line of a telephone or telegraph company; but it permits the condemnation, subject to a continuing provision in the judgment that there shall be no interference with such existing line or lines.

The existing line has secured to it, by the condemnation permitted, a priority of right against interference. The act provides that the condemnation may be had, provided it does not interfere with the ordinary operations of the railway company. This, the court below held, raised a question to be settled in limine. But there is no such proviso as to existing telegraph and telephone lines. There the mandate of the statute is that the judgment of condemnation shall provide that the new line, to be built on the condemned easement, shall not interfere with an existing telegraph or telephone line, and the construction is undertaken subject to this requirement.

The court below held that under the statute he was not required to pass on the question of such interference before permitting the condemnation. We do not think that the statute of 1903 made it a condition to permitting this condemnation that the court must pass in limine in this proceeding on the question of whether a line could be

built which would not interfere, and find this issue in favor of the petitioner.

[2] Again the intervention in this case did not seek absolutely to defeat the condemnation. The prayers of the intervening petition were:

"That the said Postal Telegraph-Cable Company be prohibited from proceeding with this condemnation in such manner as to in any wise interfere with the use of the telephone line of your intervener already in such right of way and that the rights of your intervener in its said telephone line be in all respects fully protected."

The allegations of the petition for intervention intimated that there were certain appliances by the use of which such protection would be given. The answer filed by intervener prayed that the right of condemnation, if granted, should be with such restrictions and conditions incorporated in the order as to fully protect the intervener's line, and prevent the impairment of the efficiency of its service thereon.

Even if the court had power under the act of 1903 to pass on the question in limine of whether it was possible to build the line of petitioners without interference with that of the intervening defendant, we do not think the judgment in this case under the pleadings herein is erroneous. The court found that the evidence was conflicting on the subject of such interference, and, in accordance with the statute, provided in the judgment of condemnation:

"That petitioner's said telegraph and telephone line shall be constructed, as aforesaid, and so as not to interfere with the operation of the trains of said defendant railway company, or with any telegraph or telephone lines already upon such right of way."

In his findings and opinion he says:

"And, if so constructed, certainly there can be no cause of complaint by such telephone or telegraph company, and no right of such company, property or otherwise, invaded, by the proceeding."

We therefore are of the opinion that the court afforded to intervener sufficient protection to its rights under this statute, and the statutory proceeding had thereunder, by the provision in the judgment that the line should be constructed so as not to interfere with any telegraph or telephone line already upon such right of way, and by reserving jurisdiction for the purpose of enforcing the provisions of said judgment.

The judgment is therefore affirmed.